UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 24-cr-282-KMM

United States of America,

Plaintiff,

v.

Karan Gupta,

Defendant.

**DEFENDANT KARAN GUPTA'S POSITION REGARDING SENTENCING**

## INTRODUCTION

Pursuant to the Court's scheduling order and D. Minn. LR 83.10(e), Defendant Karan Gupta submits his position regarding sentencing. Mr. Gupta preserves his trial, post-trial, restitution, and Guidelines objections, but addresses sentencing under the jury's verdict and the advisory Guidelines framework.

Mr. Gupta asks the Court to resolve the disputed sentencing issues as follows: (1) limit restitution to the $556,811 charged-offense loss; (2) decline to treat Daaz Consulting as relevant conduct; (3) reject the late-added two-level aggravating-role enhancement under U.S.S.G. § 3B1.1(c); (4) apply the two-level zero-point offender reduction under U.S.S.G. § 4C1.1; and (5) calculate a final offense level of 21, Criminal History Category I, and an advisory range of 37 to 46 months.

The Court should then impose a sentence below that advisory range. A sentence of probation with substantial conditions—including home detention or community confinement as the Court deems appropriate, strict financial disclosure, continued

employment, restitution payments, and community service—would be sufficient, but not greater than necessary, under 18 U.S.C. § 3553(a).

This submission addresses: (A) restitution; (B) relevant conduct and the Government's burden on disputed sentencing facts; (C) aggravating role and zero-point offender eligibility; (D) the proper Guidelines calculation; and (E) the sentencing factors under 18 U.S.C. § 3553(a).

## DISCUSSION

### A. Restitution

The final PSR identifies $556,811 as restitution for the charged offenses. The Government seeks to add $246,389 for Daaz Consulting. Mr. Gupta does not object to the arithmetic of those figures, but he objects to including Daaz in a restitution order because Daaz was not part of the offense of conviction or the charged Kaul/Gupta scheme. The Government bears the burden to prove both the amount of restitution and the causal connection between any claimed loss and the offense of conviction. 18 U.S.C. § 3664(e).

The Mandatory Victims Restitution Act (MVRA) requires restitution to a victim directly and proximately harmed by the offense of conviction. 18 U.S.C. § 3663A(a)(1), (a)(2). Where the offense includes a scheme, conspiracy, or pattern as an element, restitution may extend beyond the specific wire transmissions or counts of conviction, but only to criminal conduct in the course of the scheme charged in the indictment. It does not extend to every act that may be considered at sentencing under the broader Guidelines relevant-conduct framework.

The Indictment charged a specific Optum ghost-employee scheme involving Mr. Gupta and Shangraf Kaul. The alleged mechanism was that Kaul collected Optum salary while performing no work, and Kaul and Gupta split the proceeds of Kaul's salary in a way that concealed Gupta's involvement. Financial records introduced at trial showed that Kaul received approximately $556,991 in salary over four years and transferred approximately $184,451 to Gupta.

The Government now wants to include an additional $246,389 from a separate scheme involving Daaz Consulting, which was not connected with Kaul and was nowhere contained in the allegations of the Indictment.

The Indictment describes and limits the offense. The Sixth Amendment requires that the accused "be informed of the nature and cause of the accusation[.]" U.S. Const. amend. VI. "The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). For purposes of restitution after a jury conviction, "the scope of the scheme is defined by the indictment." *United States v. Jones*, 641 F.3d 706, 714 (6th Cir. 2011); *see also United States v. Alisuretove*, 788 F.3d 1247, 1258–59 (10th Cir. 2015). "[T]he loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Hughey v. United States*, 495 U.S. 411, 420 (1990).

Daaz Consulting is different. It involved a separate consulting entity, a different payment mechanism, and no participation by Kaul. It was not charged in the Indictment. At trial, Daaz was admitted as Rule 404(b) other-act evidence for limited evidentiary purposes and not as part of the charged offense. The point is not that Rule 404(b)

automatically controls the MVRA. It does not. The point is that the Court already rejected the Government's request to treat Daaz as intrinsic to the charged Kaul case and instead admitted it only for limited Rule 404(b) purposes. (Pretrial Conf. Tr. 53:25–62:7, Jan. 28, 2026.) That record posture strongly confirms that Daaz should not be converted at sentencing into MVRA restitution for the offense of conviction.

*United States v. Ramirez*, 196 F.3d 895 (8th Cir. 1999), is the controlling Eighth Circuit starting point. There, the Eighth Circuit limited restitution to the charged Willmar Project fraud because the indictment did not state or imply that the fraud was part of a broader ongoing scheme. *Id*. at 900. The same principle applies here. The charged scheme was the Kaul/Gupta ghost-employee salary scheme; Daaz was not charged or implied as part of that scheme.

The Government may rely on broad-scheme cases such as *United States v. Cornelsen*, 893 F.3d 1086 (8th Cir. 2018), and *United States v. Hansmeier*, 988 F.3d 428 (8th Cir. 2021). Those cases do not eliminate the indictment-based limit. They allow restitution for uncharged acts within a broad charged scheme. They do not allow restitution for a separate uncharged scheme merely because the victim is the same or because the conduct was admitted for a limited Rule 404(b) purpose.

That distinction matters because relevant conduct and restitution are not coextensive. *See United States v. Howard*, 759 F.3d 886 (8th Cir. 2014); *United States v. Sukhtipyaroge*, 394 F. Supp. 3d 951, 958–59 (D. Minn. 2019). Even if the Government could prove Daaz for some Guidelines purpose, it still must prove that Daaz losses were

directly and proximately caused by criminal conduct in the course of the charged Kaul/Gupta scheme.

The restitution order should therefore be limited to $556,811 for the charged offenses. The Daaz amount should not be included in restitution.

**B. Relevant Conduct**

The same separation controls the Guidelines relevant-conduct dispute. Rule 404(b) and U.S.S.G. § 1B1.3 serve different functions. Rule 404(b) permits limited-purpose evidence outside the charged offense to prove matters such as intent, knowledge, or absence of mistake. Section 1B1.3 asks a different sentencing question: whether the conduct was part of the same course of conduct or common scheme or plan as the offense of conviction.

*United States v. Spence*, 125 F.3d 1192 (8th Cir. 1997), is useful because it treated Rule 404(b) admissibility and § 1B1.3 relevant conduct as separate questions. The prior marijuana seizure was admitted under Rule 404(b) for knowledge and intent, and the court separately reviewed whether it was part of the same course of conduct for Guidelines purposes. *Id*. at 1195–96. The Government therefore cannot bootstrap the Court's Rule 404(b) evidentiary ruling into a Guidelines relevant-conduct finding.

A common corporate victim is not dispositive on these facts. For a common scheme or plan, the Government must prove a substantial connection such as common accomplices, common purpose, or similar modus operandi. For the same course of conduct, the Court considers similarity, regularity, and temporal proximity, with a stronger showing of the remaining factors required when one is absent. Daaz did not involve Kaul, did not use the

Kaul salary-payment mechanism, did not use Kaul's employment status, and was not charged as part of the Indictment's scheme. The broad relevant-conduct cases are distinguishable because they involved concrete links absent here. *Sheahan* involved both a common victim and a common accomplice; *Killgo* involved a common business front, similar documents, the same accomplice, and acts occurring within months; and *Mshihiri* involved testimony connecting the additional properties to the charged mortgage-fraud conspiracy and showing they were defrauded during the charged period by a substantially similar scheme. *See United States v. Sheahan*, 31 F.3d 595, 599–600 (8th Cir. 1994); *United States v. Killgo*, 397 F.3d 628, 631–32 (8th Cir. 2005); *United States v. Mshihiri*, 816 F.3d 997, 1011 (8th Cir. 2016). The offense of conviction here remains the Kaul/Gupta ghost-employee scheme and not Daaz Consulting.

Because Mr. Gupta specifically objects to Daaz as relevant conduct, the PSR's characterization and the PSR Addendum's response do not themselves resolve the disputed Guidelines nexus. Under Fed. R. Crim. P. 32(i)(3)(B) and U.S.S.G. § 6A1.3, the Court must either resolve the disputed matter based on evidence with sufficient indicia of reliability or state that it will not consider the disputed matter. *See United States v. Ramirez*, 196 F.3d 895, 899 (8th Cir. 1999); *United States v. Webster*, 788 F.3d 891, 901 (8th Cir. 2015); *United States v. Berrier*, 28 F.4th 883, 887–88 (8th Cir. 2022); *United States v. Poor Bear*, 359 F.3d 1038, 1041–42 (8th Cir. 2004). The Government bears the burden of proving disputed relevant conduct by a preponderance of reliable evidence.

If the Government asks the Court to rely on trial evidence, including Daaz evidence admitted under Rule 404(b), the Court may consider the trial record at sentencing. But the

Court still must make a separate § 1B1.3 finding grounded in evidence and in the common-scheme/same-course standards under the Guidelines, rather than in the Rule 404(b) ruling or the disputed PSR characterization. On this record, Daaz should be excluded from relevant conduct.

### C. Aggravating Role/Zero-Point Offender

The late-added § 3B1.1(c) enhancement should not apply. (See PSR at A.4, ¶ 6). The issue matters because it creates a four-level swing: two levels are added for an aggravating role and the same finding eliminates the two-level zero-point offender reduction under § 4C1.1. The Probation Officer's initial recommendation was correct. Kaul and Gupta were average participants. Each had a role, but they were not hierarchically arranged in the criminal activity. Mr. Gupta may have been "Mr. Inside," and Mr. Kaul was "Mr. Outside," but the Guidelines address Mr. Gupta's insider status through the two-level abuse-of-position-of-trust adjustment under § 3B1.3.

The Eighth Circuit construes the organizer, leader, manager, and supervisor broadly, and a two-participant scheme can support § 3B1.1(c). But breadth is not absence of the threshold. The enhancement does not turn on job title, workplace authority, or the fact that Mr. Gupta held a position that helped conceal the offense. It applies only if the defendant organized, led, managed, or supervised at least one other criminally responsible participant in the criminal activity. The minimum showing is that the defendant directed or procured the aid of another participant. Mere co-equal participation, concern for the scheme's success, sharing of proceeds, or authority over business operations is not enough. *See United States v. Rowley*, 975 F.2d 1357 (8th Cir. 1992); *United States v. Irlmeier*, 750 F.3d

759 (8th Cir. 2014); *United States v. Adejumo*, 772 F.3d 513 (8th Cir. 2014); *United States v. Musa*, 830 F.3d 786 (8th Cir. 2016); *United States v. Hammerschmidt*, 881 F.3d 633 (8th Cir. 2018). Routine workplace supervision is not the same thing as supervising a criminal participant in the criminal activity itself.

The Government therefore must prove facts showing Mr. Gupta directing the criminal activity and not simply the existence of a workplace relationship. Cases applying the enhancement involve actual direction of criminal tasks, logistics, concealment, recruitment, or proceeds collection. Cases rejecting it involve the absence of proof that the defendant directed or procured the aid of another participant. The Court should require that same factual line here.

The record does not support Probation's first premise that Gupta recruited Kaul into the scheme. Kaul testified that he reached out to Gupta about obtaining employment at Optum in 2014:

> Q: And at the time you reached out to him in 2014 related to your job search, were you asking him to assist you with getting a job at Optum?
> A: Yes, I asked him if I could get a position in his company....

(Trial Tr. vol. 4 at 585.) That evidence shows that Kaul initiated the employment request. The hiring records also showed that Gupta's relationship with Kaul was not hidden from Optum. Gupta was identified as Kaul's hiring manager for employment. (Ex. A-5.)

The resume evidence likewise does not establish that Gupta organized or managed Kaul's criminal participation. Gupta forwarded a resume from another person as a guide. Kaul then fabricated his own resume by adopting large portions of another person's job and education history. The evidence also showed that Kaul had independently used false

or misleading resumes in other employment contexts, including his TopCon resume, which omitted his actual employment history and listed Optum as his most recent employer. (Ex. K-4.)

Nor does the interview evidence establish criminal supervision. The trial records indicate that Gupta may have been invited to participate in the interview process, but HR conducted the interview and made the employment decision. (Exs. A-5, A-6.) Participation in an employer's hiring process is not the same thing as directing a criminal participant in a fraud scheme.

Probation also states that Gupta managed and supervised Kaul while Kaul was employed at Optum. (PSR at A.4, ¶ 6.) That formulation assumes the answer to the Guidelines question. If Kaul was not actually performing work, then Gupta was not managing Kaul's work in any meaningful sense. Nor does managing an employment status or a concealment opportunity itself prove management of a criminal participant. Section 3B1.1 requires organization or supervision of people in criminal activity rather than mere control over business processes, records, or access. The relevant conduct was concealment—failing to report that Kaul was not performing his job—and that conduct is already captured, if at all, by the § 3B1.3 abuse-of-position-of-trust enhancement.

The defense does not contend that §§ 3B1.1(c) and 3B1.3 can never both apply. Section 3B1.3 expressly permits simultaneous application when the enhancement is based on abuse of trust. But the two adjustments address different harms. Section 3B1.3 addresses abuse of the victim's institutional trust, and Section 3B1.1(c) addresses control over

another criminal participant. The same supervisory label cannot do all the work for both enhancements without distinct factual findings.

Mr. Gupta preserves any objection to § 3B1.3, but for purposes of the defense Guidelines calculation he assumes that adjustment. That assumption does not establish § 3B1.1(c). A qualifying § 3B1.3 position requires professional or managerial discretion, substantial discretionary judgment, and reduced supervision. Employment access alone is not enough. *See United States v. Hayes*, 574 F.3d 460 (8th Cir. 2009); *United States v. Natysin*, 966 F.3d 738 (8th Cir. 2020). To the extent the Court relies on § 3B1.3, that finding should remain limited to Gupta's institutional relationship with Optum and should not be transformed into a separate finding that Gupta managed Kaul as a criminal participant.

Finally, the money split does not support an aggravating-role finding. The PSR's 60/40 characterization is not supported by the payroll records. Of the $447,347.49 in net pay after taxes, Kaul transferred $184,451 to Gupta and retained $262,964.49—more than 58% of the net compensation. A split favoring Kaul is not dispositive, because profit share is only one § 3B1.1 factor. But it undercuts any claim that Gupta claimed a larger share of the fruits of the offense or that the proceeds themselves prove he was the organizer or leader.

The § 3B1.1(c) enhancement should therefore be rejected. If it is rejected, Mr. Gupta qualifies for § 4C1.1. The Government has not identified any separate § 4C1.1 disqualifier. In particular, there is no evidence that the charged loss caused the kind of substantial financial hardship contemplated by § 4C1.1(a)(6), § 4C1.1(b)(3), and the incorporated § 2B1.1 Application Note 4(F) factors: insolvency, bankruptcy, impairment of credit,

inability to meet financial obligations, substantial changes in employment or living arrangements, or analogous financial disruption. A corporate victim is not categorically excluded from the hardship analysis, but § 4C1.1(a)(6) requires proof of substantial financial hardship and not merely proof of a monetary loss. *See* U.S.S.G. § 4C1.1(b)(3); U.S.S.G. § 2B1.1 cmt. n.4(F); *cf. United States v. Davis*, No. 15-cr-247(1) (PJS/SER), 2017 WL 1423178, at *2–3 (D. Minn. Apr. 21, 2017) (rejecting substantial-financial-hardship enhancement where the Government failed to prove that the defendant's theft caused the organizational victim's receivership). Bare monetary loss to a large corporate victim, without evidence of operational or financial disruption, should not disqualify a zero-point offender.

### D. Sentencing Guidelines Calculation

With Mr. Gupta's objections sustained, the correct Guidelines calculation is:

- **Counts 1-11 (wire-fraud conspiracy and wire fraud):** Base offense level 7 under § 2B1.1(a)(1); 14 levels for loss exceeding $550,000 under § 2B1.1(b)(1)(H); and 2 levels under § 3B1.3 for abuse of a position of trust, resulting in adjusted offense level 23.
- **Count 12 (money-laundering conspiracy)**: Under § 2S1.1(a)(1), the base offense level is the Chapter Two offense level for the underlying fraud offense—base offense level 7 plus 14 levels for loss under § 2B1.1(b)(1)(H), for level 21. Section 2S1.1(b)(2)(B) then adds 2 levels because Count 12 is a conviction under 18 U.S.C. § 1956, producing an adjusted offense level 23. Any Chapter Three adjustment to the laundering count must be based on the laundering offense itself, not imported from the underlying fraud offense. U.S.S.G. § 2S1.1 cmt. n.2(C).
- The fraud and money-laundering counts group under § 3D1.2(c) and § 2S1.1 cmt. n.6. So, § 3D1.4 does not add additional units. *See United States v. Ross*, 279 F.3d 600 (8th Cir. 2002).

The total offense level before Chapter Four adjustment is 23. Because § 3B1.1(c) should not apply, Mr. Gupta receives the two-level zero-point offender adjustment under § 4C1.1, resulting in a final offense level of 21. With Criminal History Category I, the advisory range is 37 to 46 months.

If the Court applies § 3B1.1(c), Mr. Gupta preserves his objection. That ruling would add two levels and eliminate the two-level § 4C1.1 reduction, producing a final offense level of 25 and an advisory range of 57 to 71 months. The Court should not adopt that calculation for the reasons stated above.

The fine range at offense level 21 is $15,000 to $150,000. The Court should impose no fine, or at most a nominal fine, because 18 U.S.C. § 3572(b) directs that a fine should be imposed only to the extent it will not impair the defendant's ability to make restitution. If the Court imposes any fine, it should structure the fine and payment schedule so that restitution remains the financial priority and is not impaired. Any available financial capacity should be directed first to restitution, family support, and maintaining employment.

**E. Sentencing Considerations**

18 U.S.C. § 3553(a) directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in paragraph (2) of that subsection. The statutory factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> * * *
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

Originally, these considerations were trumped by Section 3553(b), making the Guideline sentencing range mandatory absent a demonstrated failure by the Sentencing Commission to adequately consider a factor. In a remarkable series of decisions issued between 2005 and 2007, the Supreme Court rewrote the sentencing landscape. First in *Booker v. United States*, 543 U.S. 220 (2005), the Court eliminated the statutory requirement that the Sentencing Guidelines are mandatory, requiring courts to sentence for conduct not subject to proof at trial. The guidelines themselves are not presumed to be reasonable. In *Rita v United States*, 551 U.S. 338 (2007), the Court stated that a sentence within the guidelines could be presumed to be reasonable on appellate review but reiterated that such a presumption does not apply in the sentencing court. In *Gall v. United States*, 552 U.S.38 (2007), the Court found that the sentencing court is limited by reasonableness in deciding a sentence whether within or without the guideline range; there is no requirement that extraordinary conditions must exist to support any non-guidelines sentence. In *Kimbrough v. United States*, 552 U.S. 85 (2007), the Supreme Court said the

principle of reasonableness included disagreements with the efficacy of the guidelines to reflect the 18 U.S.C. 3553(e) sentencing factors and that a sentencing court may vary based on case-specific § 3553(a) considerations and, where appropriate, policy disagreement with a Guideline.

The advisory Guidelines range is the starting point rather than the endpoint. The Court must impose a sentence sufficient, but not greater than necessary, to satisfy § 3553(a). No presumption of reasonableness for the Guidelines range applies in this Court, and the Court may vary based on the facts of the case and, where appropriate, a policy disagreement with a Guideline that overstates the punishment necessary to achieve the statutory purposes.

This offense involved intentional deception, abuse of an employer's internal processes, and a real financial loss. Mr. Gupta does not ask the Court to minimize that harm. The sentencing question is proportionality: what sentence is sufficient to punish this offense, deter others, protect the public, provide restitution, and avoid unnecessary incarceration for a first offender who presents no public-safety risk.

UnitedHealth and its subsidiaries have hundreds of thousands of employees and hundreds of billions in yearly revenue. The theft was entirely internal, not affecting customers or suppliers. The amount of loss—$560,000—was so small in the normal course of business that it went unnoticed by Gupta's supervisors. There was no long-term damage. The scheme reflected a failure of Optum's internal controls in a narrow payroll setting and not harm to patients, customers, suppliers, or the public. Internal controls are usually designed to deter theft by having authority divided, requiring two to work together to

circumvent the rules. That rare event happened here. It has not happened since. The investigation was handled internally. Most employees never knew the offense had taken place. Optum's reputation took no hit here. For Optum, Gupta's offense was financially insignificant.

Although Optum's loss was $560,000, Gupta's gain was only a fraction—roughly $185,000—spread out over four years. That remains serious. But for that, he lost a highly compensated career at a successful company, with significant future earning potential. He is now being prosecuted, convicted of a federal felony, and facing years of government supervision and perhaps incarceration. The consequences are substantial for Mr. Gupta.

General deterrence matters in employment fraud cases. But deterrence does not require a Guidelines prison sentence in every first-offender case. A felony conviction, public prosecution, restitution judgment, strict financial disclosure, employment restrictions, community service, and home detention are substantial sanctions. For Mr. Gupta, those sanctions would be concrete, public, and lasting while preserving his ability to make restitution.

The loss figure overstates Mr. Gupta's personal culpability. The charged loss is approximately $556,811, but Gupta's gain was approximately $184,451 over four years. That remains serious. But the loss table treats the corporate loss as the dominant driver of punishment even though Gupta did not receive anything close to that amount, did not cause bodily injury, did not endanger patients or customers, and did not create a continuing public-safety risk.

The Sentencing Commission's adopted 2026 amendment to § 2B1.1 confirms that the current loss thresholds overstate proportional punishment in near-threshold cases like this one. The Court is not required to apply the future manual as the operative Guidelines calculation. But under § 3553(a), the Court may consider the Commission's current and impending policy judgment that the loss table should be adjusted. Under the adopted table, scheduled to take effect November 1, 2026, absent congressional action, the charged loss would produce a 12-level enhancement rather than the current 14-level enhancement. That difference supports a downward variance.

Mr. Gupta's history and characteristics also support a variance. He is a first offender with zero criminal history points. He has maintained continuous lawful employment throughout his adult life. He has raised two children, supported his wife through medical school, maintained a modest household, and helps care for his mother who lives with the family. He has no history of violence, substance abuse, dangerousness, or a likelihood of future criminal conduct.

Restitution is a statutory sentencing factor. 18 U.S.C. § 3553(a)(7). A sentence that allows Mr. Gupta to remain employed under strict supervision will do more to compensate Optum than a lengthy prison sentence that interrupts earning capacity and delays meaningful repayment. The Eighth Circuit has recognized that continued employment and restitution can support a major variance when considered as part of a complete § 3553(a) analysis. *See United States v. Cole*, 765 F.3d 884 (8th Cir. 2014).

Probation is not leniency without punishment. As *Gall* recognized, probation is a substantial restraint on liberty. The Court can impose up to five years of probation with a

substantial period of home detention or community confinement, community service, financial disclosure, restitution payment schedules, credit restrictions, and employment restrictions, including a requirement that Probation approve any position involving payroll, billing, contractor approval, or fiduciary authority. *See* 18 U.S.C. §§ 3561, 3563(b)(4), (5), (10)–(12), (19), (22). Those conditions would punish, deter, and monitor Mr. Gupta while preserving his ability to work and make restitution.

Congress also directed the Sentencing Commission to reflect the general appropriateness of non-imprisonment sentences for first offenders who have not been convicted of crimes of violence or otherwise serious offenses. 28 U.S.C. § 994(j). Yet for decades, the Sentencing Commission has not issued a guideline calling for presumptive probation for every covered first offender. That directive still matters here. Mr. Gupta is a first offender, the offense was nonviolent, and the central purposes of sentencing can be achieved through strict supervision, financial accountability, and restitution, without concluding that imprisonment is the only available means of punishment.

Finally, Mr. Gupta should not be punished for exercising his right to trial or preserving legal issues. He recognizes that he has not received acceptance-of-responsibility credit. But the absence of that reduction is already reflected in the Guidelines calculation. The Court can acknowledge the jury's verdict and the harm to Optum without adding any further trial penalty.

## CONCLUSION

For these reasons, the Court should limit restitution to $556,811, exclude Daaz from relevant conduct, reject the § 3B1.1(c) enhancement, apply § 4C1.1, and calculate a final offense level of 21 with an advisory range of 37 to 46 months.

The Court should then vary downward and impose five years of probation with substantial conditions, including a period of home detention or community confinement as appropriate, continued employment, strict financial disclosure, a restitution payment schedule, credit restrictions, employment restrictions for positions involving payroll, billing, contractor approval, or fiduciary authority, and community service. If the Court imposes any fine, it should find that the fine and payment schedule will not impair restitution.

**KELLEY, WOLTER & SCOTT, P.A.**

Dated: August 19, 2026

By: s/ *Daniel M. Scott*
Daniel M. Scott (#98395)
Brett D. Kelley (#397526)
11100 Wayzata Blvd, Suite 510
Minnetonka, MN 55305
Tel: (612) 371-9090
Fax: (612) 371-0574
Email: dscott@kelleywolter.com
Email: bkelley@kelleywolter.com

*Attorneys for Karan Gupta*