UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 24-cr-282-KMM

---

United States of America,

Plaintiff,

v.

Karan Gupta,

Defendant.

**DEFENDANT KARAN GUPTA'S RESPONSE TO GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE**

---

## INTRODUCTION

Defendant Karan Gupta responds to the Government's Motion for Preliminary Order of Forfeiture. Mr. Gupta preserves his trial, post-trial, Guidelines, restitution, and forfeiture objections, but addresses the Government's request under the jury's verdict and Rule 32.2. The present issue is relatively narrow. Mr. Gupta does not dispute that forfeiture may be ordered as part of the sentence if the Government proves a forfeitable amount under the applicable statute. He objects to entry of the Government's proposed $334,146 money judgment, general order, and discovery authorization on the present record.

The Government filed its motion on August 18, 2026, six days before sentencing and more than six months after the February 13, 2026 verdict. The timing alone does not bar forfeiture. *See McIntosh v. United States*, 601 U.S. 330 (2024). But timing is relevant because the requested amount is contested, the motion relies on disputed factual assumptions, and Rule 32.2(b)(2)(B) is designed to allow the parties to suggest revisions before a preliminary order becomes final at sentencing. If the Court is not prepared to deny

the motion as drafted, Mr. Gupta requests a contested forfeiture hearing under Rule 32.2(b)(1)(B), and asks the Court to defer finalization of any forfeiture order until the Government proves a lawful amount with reliable evidence.[1]

The defect is substantive as well as procedural. The Government seeks $334,146 by applying an alleged 60/40 split to $556,911.04 in compensation paid to Kaul. But the financial records identified in Mr. Gupta's sentencing submission show that, of $447,347.49 in net pay after taxes, Kaul transferred $184,451 to Gupta and retained $262,964.49. The Government's own sentencing memorandum now confirms the same basic point: it states that Kaul paid Gupta "over $185,000 in kickbacks," and that after withholdings approximately $350,778 was deposited into Kaul's accounts, of which approximately $185,201 was transferred to Gupta. (Gov't Sent'g Pos. 2, 4, ECF No. 134.) The Government's proposed $334,146 judgment therefore is not based on the record of what Gupta received or what was actually transferred to him. It is a disputed allocation derived from Kaul's plea agreement and the PSR. Because those facts are contested, they must be proved by the Government.

## DISCUSSION

### A. The Court should not enter the proposed order at sentencing without resolving the contested forfeiture amount.

Rule 32.2 creates a sequence. As soon as practical after the verdict, the Court must determine what property is subject to forfeiture and, if the Government seeks a money

[1] The parties have not yet discussed forfeiture, which could obviate the Government's motion.

judgment, the amount the defendant will be ordered to pay. Fed. R. Crim. P. 32.2(b)(1)(A). The determination may rest on evidence already in the record and on additional information that the Court accepts as relevant and reliable. Fed. R. Crim. P. 32.2(b)(1)(B). But when forfeiture is contested, Rule 32.2(b)(1)(B) provides that, on either party's request, the Court must conduct a hearing after the verdict or finding of guilty.

The Government's filing schedule compresses that procedure. Rule 32.2(b)(2)(B) requires the preliminary order to be entered sufficiently in advance of sentencing, unless impractical, so the parties can suggest revisions or modifications before the order becomes final. *McIntosh* holds that the rule is a time-related directive rather than a jurisdictional bar, but it does not authorize a court to bypass contested findings. Because Mr. Gupta timely contests the amount and requests a Rule 32.2(b)(1)(B) hearing, the proper course is not automatic entry of the Government's proposed order; it is denial as drafted, deferral, or a limited order preserving the contested issues for adjudication. The Eighth Circuit likewise recognizes procedural tools for contested forfeiture issues, including reserving forfeiture for a defined period or continuing sentencing only as to forfeiture. *See United States v. Koch*, 491 F.3d 929, 931-32 (8th Cir. 2007); *United States v. Unpradit*, 35 F.4th 615, 626-27 (8th Cir. 2022).

Mr. Gupta timely contests forfeiture. The Court should therefore deny the proposed order as drafted or set the matter for a Rule 32.2(b)(1)(B) hearing. The Court should not enter a disputed $334,146 money judgment, a general order, and broad discovery authorization on the eve of sentencing without findings resolving the disputed factual basis for the amount.

**B. The Government has not proved the $334,146 money judgment it seeks.**

The Government's calculation is simple: it takes $556,911.04, characterizes that amount as fraud proceeds paid to Kaul, applies Kaul's alleged 60/40 allocation, and asks the Court to enter a money judgment of $334,146 against Gupta. The premise is that Gupta actually received sixty percent of the proceeds. The record identified by the defense shows otherwise. The payroll records show $447,347.49 in net pay after taxes, with $184,451 transferred to Gupta and $262,964.49 retained by Kaul. The Government's sentencing memorandum similarly states that Optum paid Kaul approximately $556,911, but that after withholdings approximately $350,778 was deposited into Kaul's accounts and approximately $185,201 was transferred to Gupta. (Gov't Sent'g Pos. 4, ECF No. 134.) That is not a minor rounding dispute. It is the difference between a forfeiture judgment based on actual transfers and a forfeiture judgment based on a disputed allocation.

The Government's sentencing memorandum also separates the sentencing-loss issue from the forfeiture issue. For Guidelines loss, the Government argues that it is "irrelevant whether Gupta and Kaul split the proceeds 60-40 or 50-50" because "the issue is what Optum lost." (Gov't Sent'g Pos. 11, ECF No. 134.) But forfeiture is not Guidelines loss. The point is not that the same facts can never matter differently under different legal standards. They can. The point is that forfeiture requires proof of the amount subject to forfeiture, and the Government's own sentencing memorandum identifies actual transfers to Gupta of approximately $185,201—not $334,146.

The Government bears the burden to prove the amount of a forfeiture money judgment by a preponderance of the evidence. *See United States v. Peithman*, 917 F.3d

635, 652 (8th Cir. 2019); *United States v. Al Sharairei*, 130 F.4th 656, 673 (8th Cir. 2025). "The district court did not need to calculate the proceeds subject to forfeiture with 'mathematical exactitude,'" *Al Sharairei*, 130 F.4th at 667, but reasonable inference still requires an evidentiary foundation. *Al Sharairei* upheld a money judgment supported by business records, testimony, and a conservative calculation of actual sales. It does not support replacing the bank records here with a contested percentage taken from another defendant's plea agreement.

Nor can the Government solve the problem by citing the PSR or Kaul's plea agreement. Kaul's plea agreement is Kaul's admission and not Gupta's. And a PSR is not evidence of a contested material fact. When a defendant objects to PSR factual allegations, the Government must prove the facts relied upon by a preponderance, or the Court must disregard them. *See United States v. Cottrell*, 853 F.3d 459, 464 (8th Cir. 2017); *United States v. Webster*, 788 F.3d 891, 901 (8th Cir. 2015); *United States v. Ramirez*, 196 F.3d 895, 899 (8th Cir. 1999). The same principle applies here. The Court may consider reliable information in a forfeiture proceeding, but it cannot treat a contested PSR allocation or co-defendant plea statement as a substitute for proof of the amount sought from Gupta.

The Government may argue that the gross receipts definition of proceeds permits a broader forfeiture amount and that proceeds should not be limited to net profit. Mr. Gupta does not dispute that § 981(a)(2)(A) is broad. But that does not answer the question presented by the Government's motion. The Government did not ask for the full victim-loss amount as a joint-and-several fraud forfeiture judgment; it represented that it seeks only the portion Gupta received. Having chosen that theory, the Government must prove

what Gupta received, and the current record supports no amount greater than the transfers reflected in the financial records. Nor has the Government shown that the tax-withheld portion was ever received, controlled, or laundered by Gupta or Kaul, as opposed to being withheld by the payroll system before any distribution of proceeds.

**C. Neither Section 981 nor Section 982 supports the proposed amount on this record.**

Section 981(a)(1)(C) does not eliminate the Government's burden. Mr. Gupta recognizes that, under current Eighth Circuit law, *Honeycutt v. United States*, 581 U.S. 443 (2017), does not apply to § 981(a)(1)(C), and joint-and-several liability remains available under that statute. *See Peithman*, 917 F.3d at 652-53; *United States v. Asomani*, 7 F.4th 749, 754-55 (8th Cir. 2021). Mr. Gupta preserves the argument that *Honeycutt*'s acquisition principle should apply to § 981(a)(1)(C). That preservation is not academic: when *Peithman* reached the Supreme Court, the United States conceded that there is no meaningful distinction between § 981(a)(1)(C) and § 853(a)(1) for purposes of joint-and-several forfeiture liability, and Justice Sotomayor would have granted certiorari, vacated the judgment, and remanded for reconsideration in light of that concession. *Peithman v. United States*, 140 S. Ct. 340, 340–41 (2019) (Sotomayor, J., dissenting from denial of certiorari). If the Court rejects that objection, Mr. Gupta respectfully requests that the Court make clear that it does so based on binding Eighth Circuit precedent and not because the Government has proved that Mr. Gupta personally obtained $334,146 or laundered transactions totaling that amount. Even under *Peithman* and *Asomani*, the Court must eventually determine a supported forfeiture amount. Those cases do not permit an

unsupported percentage allocation where the financial records show a lower amount actually transferred to the defendant.

Section 982(a)(1) also does not independently justify $334,146. That statute reaches property involved in a money-laundering offense and property traceable to it. In the Eighth Circuit, property involved in laundering includes the corpus of the laundering transaction, fees paid to the launderer, and facilitating property. *See United States v. Hawkey*, 148 F.3d 920, 927 (8th Cir. 1998). But the corpus of a money-laundering conspiracy is the money conspired to be laundered through qualifying financial transactions and not automatically the total proceeds of the predicate fraud. *See United States v. Huber*, 404 F.3d 1047, 1061-62 (8th Cir. 2005); *United States v. Jennings*, 487 F.3d 564, 585-86 (8th Cir. 2007).

That distinction is relevant in a payroll-fraud case. The initial salary deposits to Kaul were the transactions through which the fraud generated proceeds. The money-laundering offense must involve a subsequent or distinct financial transaction in proceeds. The Eighth Circuit has held that the transaction creating criminally derived proceeds must be distinct from the money-laundering transaction because the laundering statutes criminalize transactions in proceeds rather than the transactions that create the proceeds. *See United States v. Awada*, 425 F.3d 522, 527 (8th Cir. 2005); *United States v. Ross*, 210 F.3d 916, 920 (8th Cir. 2000). The Government's sentencing memorandum identifies the laundering mechanics as the cash deposits, the split-deposit account, the debit card, and withdrawals or deposits by which funds reached Gupta. (Gov't Sent'g Pos. 3-4, ECF No. 134.) It then totals the amount transferred to Gupta at approximately $185,201. (*Id.* at 4.) The forfeiture motion does not identify laundering transactions totaling $334,146. It simply imports the

same disputed 60% figure and says the same amount was involved in laundering. That is not the finding Rule 32.2 requires.

Circumstantial tracing does not cure that omission. The Government need not trace every cash dollar with perfect precision, and approximate matching may be enough where the totality of timing, amounts, the transaction pattern, and absence of legitimate explanation supports the inference. *See*, *e.g.*, *United States v. Bowman*, 235 F.3d 1113, 1117-18 (8th Cir. 2000); *United States v. Dvorak*, 617 F.3d 1017, 1024-25 (8th Cir. 2010). But there still must be a calculation tied to the laundering transactions. The Government's motion does not provide one.

**D. The requested general order and discovery authority should be denied or limited.**

The Government also seeks a general order under Rule 32.2(b)(2)(C) and discovery under Rule 32.2(b)(3). Those requests should not be granted as drafted. Rule 32.2(b)(2)(C) allows a general order when, before sentencing, the Court cannot identify all specific property subject to forfeiture or calculate the total amount of the money judgment. It is a procedural bridge and not a substitute for the Court's obligation to determine the amount of a contested money judgment.

The Government's proposed sequence would give it a disputed money judgment, a general order, and discovery authority before the Court has resolved the disputed amount. That is backwards. Rule 32.2(b)(3) authorizes discovery only upon entry of a preliminary order and only discovery the Court considers proper to identify, locate, or dispose of forfeited property. Any discovery should be tethered to the forfeiture amount and statutory

basis actually found by the Court. The Government should not receive open-ended, post-conviction financial discovery to search for assets supporting a money judgment that has not yet been proved.

If the Court enters any order before a further hearing, it should be a limited partial order only. It should reserve the disputed amount, decline to authorize broad asset discovery, require the Government to identify the specific trial exhibits and transaction totals supporting any claimed amount, and make clear that any final order will be amended only after the Court resolves the contested forfeiture issues under Rule 32.2(b)(1).

## CONCLUSION

The Court should deny the Government's Motion for Preliminary Order of Forfeiture as drafted. The parties may be able to resolve forfeiture without Court intervention after conferring. Alternatively, the Court should defer entry of any final forfeiture order, conduct a contested hearing under Rule 32.2(b)(1)(B), and require the Government to prove the amount with reliable evidence. If the Court enters a partial preliminary order despite Mr. Gupta's objections, the order should not exceed the amount supported by the financial records—approximately $184,451 in transfers to Gupta, which is within $750 of the Government's own $185,201 figure. Any order should preserve Mr. Gupta's objections and should deny or narrowly limit any general order and discovery authorization until the disputed amount and statutory basis are adjudicated.

**KELLEY, WOLTER & SCOTT, P.A.**

Dated: August 21, 2026

By: s/ *Brett D. Kelley*
Daniel M. Scott (#98395)
Brett D. Kelley (#397526)
11100 Wayzata Blvd, Suite 510
Minnetonka, MN 55305
Tel: (612) 371-9090
Fax: (612) 371-0574
Email: dscott@kelleywolter.com
Email: bkelley@kelleywolter.com

*Attorneys for Karan Gupta*